# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1976 | **DATE** | 7/16/2001 |
| **CASE TITLE** | Martinez vs. Gonzalez, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1)　☐　Filed motion of [ use listing in "Motion" box above.]

(2)　☐　Brief in support of motion due _____.

(3)　☐　Answer brief to motion due_____. Reply to answer brief due_____.

(4)　☐　Ruling/Hearing on _____ set for _____ at _____.

(5)　☐　Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)　☐　Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)　☐　Trial[set for/re-set for] on _____ at _____.

(8)　☐　[Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)　☐　This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
　　　　☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10)　■　[Other docket entry]　The court finds that defendant Jesse Gonzalez is liable for damages. Judgment in the amount of $28,000, plus attorney's fees and costs is entered in favor of plaintiff and against defendant, Jesse Gonzalez. Enter Memorandum Opinion and Order. Any pending motion in this case is terminated as moot.

(11)　■　[For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | 5 | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | JUL 1 7 2001 | | |
| | Notified counsel by telephone. | | date docketed | | 96 |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | 7/16/2001 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| MPJ | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 16 PM 6: 16 | MPJ mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

RENEE HENDERSON MARTINEZ,    )
   )
      Plaintiff,    )
   )    **No. 97 C 1976**
   )    **Honorable Elaine J. Bucklo**
vs.    )    **Presiding Judge**
   )    **Magistrate Judge Arlander Keys**
   )
JESSE GONZALEZ,    )
ROBERT HOOPER and the    )
CHICAGO PARK DISTRICT    )
   )
      Defendants.    )

DOCKETED
JUL 17 2001

## MEMORANDUM OPINION AND ORDER

     Plaintiff, Renee Henderson Martinez, sued an off-duty Chicago police officer, Jesse

Gonzalez,[1] and others following an incident at a Chicago Park District facility on March 21,

1996, in which Mr. Gonzalez arrested Ms. Martinez at a Park District gymnastics meet. The case

originally went to trial before a jury on both Ms. Martinez' charges of false arrest and excessive

force,[2] under 42 U.S.C. sec. 1983. The jury found in favor of all defendants on Ms. Martinez'

claim of excessive force. It was unable to reach a verdict on Ms. Martinez' claim of false arrest

against Mr. Gonzalez. The parties stipulated to a bench trial on a retrial of the false arrest claim.

I heard evidence on May 29, 2001. This opinion constitutes my findings of fact and conclusions

of law.

     Ms. Martinez testified that on March 21, 1996 she was a Chicago Park District recreation

---

   [1] Mr. Gonzalez has since been fired from his position with the Police Department.

   [2] Trial followed an interlocutory appeal by the Chicago Park District supervisor, Robert
Hooper. The Seventh Circuit affirmed my holding that Mr. Hooper was not entitled to qualified
immunity. *Martinez v. Hooper*, 148 F.3d 856 (7th Cir. 1998).

leader. On that night, the Park District Rowen Park facility was putting on a show involving various gymnastics classes taught by the park district. The children performing in the show were from 6 - 14 years old. Ms. Martinez had grown up in the area and knew most of the parents of the performing children. The show, a two night event, was to be performed before several hundred people. At the time the incident that forms the basis for her complaint began, there were perhaps 100 people in the park district gymnasium. At that time, around 6:00 p.m., Ms. Martinez' supervisor, Robert Hooper, the manager of the Rowen Park facility, noticed children playing on the gynmastics' equipment that was to be used in the performance. He told Ms. Martinez to get them off the equipment. Ms. Martinez did so, finding five or six children on the equipment. She led the children to their parents, asking the parents to keep their children in their seats. One of the children was the son of defendant Jesse Gonzalez. Ms. Martinez testified that she took Mr. Gonzalez' son to him and asked him if he could keep his son off the equipment. Mr. Gonzalez said "No." Ms. Martinez walked away but while still in the gym, giving instructions to teenagers about where to place mats for the performance, she felt a tap on her shoulder. She turned to find Mr. Gonzalez standing there. He said to her, "Excuse me. I don't think you know who I am." She said she did. He said further, "No, I'm a Chicago policeman and I could arrest you." She told him he should talk to Mr. Hooper (who coincidentally was Mr. Gonzalez' common law brother in law) if he had a problem. Mr. Gonzalez said he did not want to talk to Mr. Hooper, but that he did not like Ms. Martinez' attitude. He said he was going to arrest her. Ms. Martinez then left the gymnasium and walked into one of the rooms where children were preparing to go into the gymnasium for their performance. Mr. Gonzalez followed her. She told him she was not doing anything wrong. Mr. Gonzalez at this point grabbed Ms. Martinez' hands and put her

in handcuffs. When she tried to pull away, he pulled her thumbs back and hurt her. He then pushed her into the hallway, which was filled with Ms. Martinez' students who were lined up along the hallway preparing to go into the gymnasium to perform. Mr. Gonzalez pulled Ms. Martinez' arms up. Mr. Gonzalez told Ms. Martinez not to hurry, he intended to make an example of her. When Ms. Martinez saw another employee, she asked him to call the police. They eventually made their way to Mr. Hooper's office. In the office, Ms. Martinez, who was by this point crying, embarrassed and humiliated, was eventually persuaded to apologize to Mr. Gonzalez, who then released her. Mr. Gonzalez did not file a police report about the incident. The show went on, although it started late as a result of the incident. Ms. Martinez was in the custody of Mr. Gonzalez approximately 35 minutes. Following the incident, Ms. Martinez' students did not come back to classes.[3] Rumors went around the Park that she had been arrested for abusing children. She eventually quit her job. As a result of Mr. Gonzalez' actions, she had bruises on her thumbs, wrists and arm, and her hands were swollen.

Mr. Gonzalez' story differs from Ms. Martinez' version in that he says when she came over to him with his child, she bent down with her finger close to his son's face and said "Now you sit down or you're going to get it." He says he then went to talk to Ms. Martinez and said he did not like her threatening his son. He says Ms. Martinez said she did not have time to talk to him. He then told her he was a police officer and could arrest her for what she just did. According to Mr. Gonzalez, Ms. Martinez admitted she knew who he was but said she didn't care and if he had a problem with it he could go talk to Mr. Hooper. She then walked away,

---

[3] Ms. Martinez had been married the day before the incident and her wedding reception was on the Saturday immediately after the incident. She then was away on a honeymoon for about a week. She came back to work after that time.

which upset him. He told her to come back, saying "Renee, I'm not done talking to you." He admits he may have said as well that you don't want to go to jail for this. He "couldn't believe she just continued walking away." He followed her, placing her under arrest.

Various witnesses to part of the incident also testified. Cynthia Kudla, a recreation leader at Rowen Park since 1990, testified that she was in the room in which Ms. Martinez came when she left the gymnasium. There were 40 or 50 children in the room, as well as 10 to 20 parents. She saw Mr. Gonzalez pulling back on Ms. Martinez' thumb, pushing it toward her wrist. Jean Tourville, an employee of the Chicago Park district for 30 years, an instructor and the Day Camp Director, testified that she was in the room with Ms. Kudla, that there were approximately 50 students and 20 parents in the room when Ms. Martinez came running in, asking for help because Mr.Gonzalez wanted to arrest her, and that she saw Mr. Gonzalez put handcuffs on Ms. Martinez. She said she told Mr. Gonzalez to stop it, that Ms. Martinez began crying and saying he was hurting her, that the children became upset, that it looked like Mr. Gonzalez was hurting Ms. Martinez, that Ms. Martinez asked her to call the police. When she later went to Mr. Hooper's office to say the show was late in starting, she heard someone say that if Ms. Martinez would apologize Mr. Gonzalez would let her go. The following day Ms. Martinez showed Ms. Tourville that she had bruises on her wrist, both hands and upper arm. Mr. Hooper testified that Mr. Gonzalez said a couple of times that he did not like the way Ms. Martinez was "treating his kid."

Having heard the testimony and observed the demeanor of the witnesses, I conclude that Ms. Martinez' version is more credible than Mr. Gonzalez. It seems doubtful at any rate that if Ms. Martinez had said the words to Mr. Gonzalez' son that he says were said that it would have

put him in imminent fear of a battery,[4] but I conclude that the words were not said. Ms. Martinez knew that Mr. Gonzalez was a policeman, he was sitting next to his son, and the words would seem to have been both unnecessary and foolish. It was also clear from Mr. Gonzalez' demeanor as well as his words that much of his complaint was that Ms. Martinez did not defer to his status as a policeman. He was also substantially impeached on various points with respect to his treatment of Ms. Martinez while she was under arrest.

Mr. Gonzalez admits that he was acting under color of law, that is by exerting his authority as a police officer, at the time of Ms. Martinez' arrest (Answer, par. 58; stipulation on jury instructions in previous trial). He says he did, however, have probable cause for the arrest. The basis for his claim of probable cause has changed over time. In his third party complaint against the city, he stated that he had taken Ms. Martinez into custody "for the crime of misdemeanor battery." (Par. 6) To Ms. Martinez, on the day in question, he stated that he could arrest her for what she had done to his son. At trial, he admitted she had not touched his son, and stated that he had decided to arrest her because she had assaulted his son. In his answer to the complaint, he also denied that he had threatened to arrest Ms. Martinez because he did not like her attitutde and denied as well that Ms. Martinez pulled away from him in the gymnasium. (Answer, pars. 13, 14). During closing argument in this trial, Mr. Gonzalez' attorney at one point appeared to argue that probable cause for the arrest arose from the fact that Ms. Martinez

---

[4] 720 ILCS 5/12-1(a). Mr. Gonzalez' son did not testify. There was no evidence that Mr. Gonzalez' son, who was sitting or standing next to his father, a policeman, was afraid he was going to be harmed by Ms. Martinez, who at any rate would have been acting within her authority in removing him from the gymnastics equipment, where, as his father admitted, he might have been injured. And, in Illinois, "words alone are not usually enough to constitute an assault." *People v. Floyd*, 663 N.E.2d 74, 76 (Ill. App. 1996).

walked away from Mr. Gonzalez but in response to specific questions from me he stated that he was not making such a claim. Since any such claim would be inconsistent with Mr. Gonzalez' answer in this case, with other pleadings, and with his testimony at trial, and with his specific statement in closing argument, I conclude that probable cause, if it existed, was dependent upon Mr. Gonzalez' belief that he had probable cause to believe that Ms. Martinez had committed an assault on his son. I have found that Ms. Martinez did not commit an assault on Mr. Gonzalez' son. Whether she actually committed an assault is not the test, however. "A law enforcement officer has probable cause to make an arrest when 'the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed ... an assault.'" *Jones by Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995), quoting from *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (brackets omitted). This is a factual inquiry. I conclude that Mr. Gonzalez did not have probable cause to believe Ms. Martinez had committed an assault. All that Ms. Martinez had done, and all of this was done with the knowledge of Mr. Gonzalez, was to bring his son over to him and ask Mr. Gonzalez to keep his son off the equipment. No reasonable person could conclude that this gave a police officer probable cause for an arrest.

Mr. Gonzalez admits that he arrested Ms. Martinez. The restraint was, therefore, intentional. It is undisputed that Ms. Martinez did not consent to the restraint, and that it was against her will. I also find that Mr. Gonzalez not only knew that he did not have probable cause to arrest her, but he intentionally and maliciously used his authority as a police officer to intimidate, humiliate and harm Ms. Martinez. Mr. Gonzalez is liable for damages.

Ms. Martinez' damages would ordinarily appear to include the physical injuries she suffered due to Mr. Gonzalez' treatment of her while she was in handcuffs. A jury, however, found him not liable for the use of excessive force, despite corroborated evidence from which it might have found the contrary. Despite this verdict, the preponderance, even the overwhelming, evidence is that she suffered some physical pain, leaving bruises and swelling, as a direct result of her arrest and Mr. Gonzalez' treatment of her while she was in his custody. These are direct damages stemming from the arrest. I find that Ms. Martinez' damage for her pain and suffering from these injuries is $3,000. There is no doubt that the greater harm was her humiliation and embarrassment and the probable harm to her reputation from the public arrest. While the time she was in custody was short, the public arena in which it occurred magnified the harm way beyond what would otherwise have been the case. This harm was lasting, and indeed, Ms. Martinez testified that she continues to suffer from the public embarrassment in a community in which she has lived all her life. I find that her damages for humiliation, embarrassment and harm to reputation are $20,000. I also award punitive damages in the amount of $5,000. Mr. Gonzalez' action was intentional, malicious, and done with the full intention of causing the harm that it did. A greater award would be warranted but given Mr. Gonzalez' family financial responsibilities and the lack of evidence to show that he could afford a greater amount, I have limited the award.

Judgment will be entered for $28,000, plus attorney's fees and costs. 42 U.S.C. sec. 1988.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: July _16_, 2001